IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02718-NYW

SIARRA AMBER BERG,

    Plaintiff,

v.

NANCY A. BERRYHILL,[*]

    Defendant.

---

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

This civil action arises under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401–33 and 1381–83(c) for review of the Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying Plaintiff Siarra Berg's ("Plaintiff" or "Ms. Berg") applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the Order of Reassignment dated March 22, 2017 [#20],[1] this civil action was assigned to this Magistrate Judge for a decision on the merits. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. After carefully considering the Parties'

---

[*] This action was originally filed against Carolyn Colvin, as Commissioner of the Social Security Administration. Commissioner Berryhill succeeded Commissioner Colvin as Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, this court automatically substitutes Acting Commissioner Berryhill as Defendant in this matter.

[1] For consistency and ease of reference, this Order utilizes the docket number assigned by the Electronic Court Filing ("ECF") system for its citations to the court file, using the convention [#___]. For the Administrative Record, the court refers to ECF docket number, but the page number associated with the Record, which is found in the bottom right-hand corner of the page. For documents outside of the Administrative Record, the court refers to the ECF docket number and the page number assigned in the top header by the ECF system.

briefing [#15; #16; #17], the entire case file, the Administrative Record, and the applicable case law, this court respectfully **REVERSES** the Commissioner's decision and **REMANDS** for further proceedings.

## PROCEDURAL HISTORY

This case arises from Plaintiff's applications for DIB and SSI filed on or about April 30, 2013. [#11-2 at 12; #11-3 at 76–79]. Ms. Berg graduated from high school and pursued a degree in Administrative Support from the Southern Institute of Technology before she withdrew due to her medical conditions. *See* [#11-2 at 47; #11-7 at 339–52]. Plaintiff alleges that she became disabled on October 1, 2006, due to depression, post-traumatic stress disorder ("PTSD"), migraines, attention deficit disorder ("ADD"), bipolar disorder, obsessive compulsive disorder ("OCD"), anxiety, macular degeneration, postural orthostatic tachycardia syndrome ("POTS"), severe fibromyalgia, chronic fatigue, degenerate back disease, child abuse, and eosinophilic esophagitis ("EE"). *See* [#11-3 at 96; #11-7 at 309]. Ms. Berg was twenty-eight years old at the date of onset of her claimed disability.

The Colorado Department of Human Services denied Plaintiff's applications administratively on or about November 6, 2013. *See* [#11-4 at 115–20]. Ms. Berg timely filed a request for a hearing before an Administrative Law Judge ("ALJ") on November 26, 2013. *See* [*id.* at 121]. ALJ Jennifer A. Simmons (the "ALJ") convened a hearing on December 4, 2014, but postponed that hearing until February 3, 2015, so Plaintiff could seek attorney representation. [#11-2 at 42, 72]. At the hearing, Ms. Berg proceeded *pro se*, and the ALJ received testimony from Plaintiff and Vocation Expert ("VE") Dr. Irmo Marini. *See* [*id.* at 37].

At the hearing, Plaintiff testified that she has not worked in the last several years, relying on Temporary Assistance for Needy Families ("TANF") to provide for herself and two teenage children. *See* [*id.* at 44]. Plaintiff explained that she would pass out on the job, which led to her

termination in or about 2005 or 2006 [*id.* at 48], and that she has not worked since because there are "days she hurts so bad that [she] can hardly do anything, like [her] muscles don't work like a person['s]" [*id.* at 55]. Ms. Berg testified that her medical ailments and surgeries also forced her to withdraw from classes at the Southern Institute of Technology in 2008. [*Id.* at 47].

Regarding her physical ailments, Ms. Berg testified that she was still recovering from a contusion on her ribs following an automobile accident [*id.* at 45–46], that she frequently loses consciousness and faints due to her POTS [*id.* at 46, 49], and that she suffers from plantar fasciitis, chronic pain, migraines, degenerative disc disease, macular degeneration, neuropathy, and hearing loss [*id.* at 47, 49, 50, 51, 55, 58, 59–60]. As to her mental ailments, Plaintiff testified that she suffers from anxiety and has panic attacks. [*Id.* at 50].

Despite these ailments, Plaintiff testified that she can drive, with licenses to operate an automobile and a motorcycle, but that she cannot swim or raise her hands above her head or she will lose consciousness. [*Id.* at 49]. Plaintiff continued that she goes grocery shopping with her sons [*id.*]; that she babysat her brother's three children for a month before it became too much for her body to handle [*id.* at 50–51]; that she talks on the phone with a friend [*id.* at 51–52]; that she walks her 140-pound dog once or twice a day and takes him to the park four or five blocks from her home [*id.* at 54]; that she cares for her dog and buys him food that her sons lift [*id.* at 55]; and that she sits on an exercise ball to strengthen her core [*id.* at 57–58]. Plaintiff testified, however, that, depending on the pain, she could only walk short distances; she cannot take hot showers or she will faint; and nothing relieves her chronic pain, including physical therapy. *See* [*id.* at 55, 56, 57, 58].

A VE also testified at the hearing. Though not testifying as to her relevant past work experience, the record indicates that Plaintiff worked as a restaurant hostess, a specific

vocational preparation ("SVP")[2] level 6 light exertion job, and as an Administrative Assistant, a SVP level 7 sedentary job. *See* [#11-7 at 360]. The VE did, however, provide answers to several hypotheticals posited by the ALJ, concerning work individuals with similar ailments as Plaintiff could perform.

First, the VE was to consider a younger individual with a high school degree and some college that could perform light work with the following limitations: (1) lifting, carrying, pushing and/or pulling 20 pounds occasionally and 10 pounds frequently; (2) standing, walking, and sitting about 6 out of 8 hours per workday; (3) no climbing of ladders, ropes, or scaffolds; (4) frequently climbing ramps and stairs, stooping, crawling, kneeling, and balancing; (5) no work at hazardous heights or around dangerous machinery; and (6) ability to understand, remember, and carry out simple, routine tasks, with only occasional interaction with the public and co-workers, but frequent interactions with supervisors. [#11-2 at 62–63]. In response, the VE testified that such an individual could perform light, unskilled work as an office cleaner, a mail clerk, and an office clerk helper—all SVP level 2 jobs that existed in significant numbers in the national economy. [*Id.* at 63]. Second, assuming the same individual as hypothetical one but that this individual would be off task 20% of the workday in addition to normal breaks, the VE testified that no gainful employment existed for such an individual. [*Id.* at 64]. Third, and finally, the VE testified that, besides the mail clerk position, such an individual from hypothetical one could miss at least 2 days of work per month and perform the jobs as an office

---

[2] SVP refers to the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Vigil v. Colvin*, 805 F.3d 1199, 1201 n.2 (10th Cir. 2015) (citing Dictionary of Occupational Titles, App. C, Sec. II (4th ed., revised 1991); 1991 WL 688702 (G.P.O.). The higher the SVP level, the longer time is needed to acquire the skills necessary to perform the job. Jeffrey S. Wolfe and Lisa B. Proszek, SOCIAL SECURITY DISABILITY AND THE LEGAL PROFESSION 163 (Fig. 10-8) (2003). SVP level 3-4 is associated with semi-skilled work. https://www.ssa.gov/OP_Home/rulings/di/02/SSR2000-04-di-02.html.

cleaner and office clerk helper; however, none of the identified jobs would tolerate missing four days per month. *See* [*id.*]. The VE stated that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). [*Id.* at 63–64].

On April 6, 2015, the ALJ issued a decision finding Ms. Berg not disabled under the Act. [#11-2 at 29]. Plaintiff requested Appeals Council review of the ALJ's decision, which the Appeals Council denied, rendering the ALJ's decision the final decision of the Commissioner. [*Id.* at 1–4]. Plaintiff sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on November 4, 2016, invoking this court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *accord Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) ("[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." (internal citation omitted)). The court may not reverse an ALJ simply because she may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). However, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation

5

omitted). The court may not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted).

## ANALYSIS

### I. The ALJ's Decision

An individual is eligible for DIB benefits under the Act if she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). SSI is available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382. An individual is determined to be under a disability only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002). Additionally, the claimant must prove she was disabled prior to her date last insured. *Flaherty*, 515 F.3d at 1069.

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. § 404.1520(a)(4)(v). *See also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. Step one determines whether the claimant is engaged in substantial gainful activity; if so, disability benefits are denied. *Id.* Step two considers "whether the claimant has a medically severe impairment or

combination of impairments," as governed by the Secretary's severity regulations. *Id.*; *see also* 20 C.F.R. § 404.1520(e). If the claimant is unable to show that her impairments would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. If, however, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to Step 3. *Williams*, 844 F.2d at 750. Step three "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. § 404.1520(d). *Id.* At step four of the evaluation process, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which defines the maximum amount of work the claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751; *see also id.* at 751–52 (explaining the decisionmaker must consider both the claimant's exertional and nonexertional limitations). The ALJ compares the RFC to the claimant's past relevant work to determine whether the claimant can resume such work. *See Barnes v. Colvin*, 614 F. App'x 940, 943 (10th Cir. 2015) (citation omitted). "The claimant bears the burden of proof through step four of the analysis." *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience. *Neilson*, 992 F.2d at 1120. The Commissioner can meet her burden by the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99, 1101 (9th Cir. 1999).

The ALJ found that Ms. Berg was insured for DIB through September 30, 2011. [#11-2 at 14]. Next, following the five-step evaluation process, the ALJ determined that Plaintiff had

not engaged in substantial gainful activity since her alleged onset date of October 1, 2006. [*Id.*]. At step two, the ALJ determined Ms. Berg had the following severe impairments: POTS, mild degenerative disc disease of the lumbar spine, small fiber neuropathy, and obesity. [*Id.*]. At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Title 20, Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). [*Id.* at 21]. The ALJ then determined Plaintiff had the RFC to perform light work subject to several limitations [*id.* at 23], and, at step four, concluded that there was insufficient evidence to determine whether Ms. Berg could perform any of her past relevant work, [*id.* at 28]. At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as an office cleaner, mail clerk, or office clerk helper. [*Id.*].

On appeal, Ms. Berg raises two issues with the ALJ's decision: (1) the ALJ erred at Step two in concluding that Plaintiff's PTSD and migraines were non-severe impairments;[3] and (2) the ALJ erred in assessing Plaintiff's RFC. [#15]. The court considers these challenges below.

## II.     Step Two

As explained, at step two the Commissioner determines whether a claimant has any severe physical or mental impairments. *See Williams*, 844 F.2d at 750. "To find a 'severe'

---

[3] Implicit in Ms. Berg's first issue on appeal is an argument that the ALJ's failure to find PTSD and migraines as severe impairments led to a flawed RFC assessment, as the ALJ failed to discuss the limitations associated with these impairments. *Compare* [#16 at 9, 11 (arguing Plaintiff fails to identify any additional limitations caused by these impairments not already included in the ALJ's RFC assessment)] *with* [#17 at 1–2 (asserting that the ALJ's RFC assessment is flawed for lack of any limitations related to migraines or limitations on consistent pace or work caused by PTSD)]. The court considers this argument with Plaintiff's other challenges to the ALJ's RFC assessment under issue two.

impairment at step two requires only a threshold showing that the claimant's impairment has 'more than a minimal effect on [her] ability to do basic work activities.'" *Covington v. Colvin*, 678 F. App'x 660, 664 (10th Cir. 2017) (quoting *Williams*, 844 F.2d at 751). When evaluating mental impairments, the Commissioner follows a special technique: first, the ALJ must decide whether the claimant has a medically determinable mental impairment; second, the ALJ must rate the degree of functional limitation that impairment has on four broad functional areas. *See* 20 C.F.R. §§ 404.1520a(a)–(d), 416.920a(a)–(d). Relevant here, the ALJ found Ms. Berg had the physical impairment of migraines and the mental impairment of anxiety disorder/PTSD, among others. [#11-2 at 17–18]. The ALJ concluded that these impairments caused no more than a minimal limitation on Ms. Berg's ability to perform basic work activities and were thus non-severe. [*Id.* at 17, 18, 20–21].

Ms. Berg argues that the ALJ's conclusion regarding these impairments was erroneous, as the medical record supports a *de minimis* showing that each affect her ability to perform basic work activities. [#15 at 8, 10–11]. Specifically, "a state agency physician opined that she has moderately [sic] difficulties" in performing mental tasks such as carrying out detailed instructions, maintaining attention, concentration, and pace, as well as interacting with the public and co-workers, among other limitations. [*Id.* at 10]. Likewise, though the only medical evidence regarding Ms. Berg's migraines is her subjective complaints, this is sufficient to prove that it is a severe impairment to be analyzed further. [*Id.*]. The Commissioner responds, and the court agrees, that the ALJ's conclusion at step two—that Plaintiff's PTSD and migraines were non-severe—does not constitute reversible error, as the ALJ found at least one severe impairment at step two and then properly considered all impairments, severe and non-severe, in later steps of her analysis. [#16 at 10–11].

9

In *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016), the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") explained, at step two "a claimant need only establish, and an ALJ need only find, one severe impairment[,]" as a finding of one severe impairment requires the ALJ to proceed to the next step, considering *all* of the claimant's ailments (severe or not) anew. "Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds at least one other impairment is severe." *Id.*; *see also Smith v. Colvin*, 821 F.3d 1264, 1266–67 (10th Cir. 2016) (holding as harmless error the ALJ's failure to find a severe left shoulder impairment at Step two when the ALJ considered shoulder impairments in assessing the plaintiff's RFC); *Howard v. Berryhill*, No. 17-CV-00276-RBJ, 2017 WL 5507961, at *4 (D. Colo. Nov. 17, 2017) ("While it certainly would have been prudent for the ALJ to consider Ms. Howard's chronic pain syndrome diagnosis at step two . . . the ALJ's failure to do so is not reversible error under *Allman* because she determined that two of Ms. Howard's other impairments were severe."). Here, "the ALJ found [four] severe impairments and proceeded with the analysis as required[;]" thus, the ALJ did not err at step two by failing to find Plaintiff's PTSD and migraines severe. *Troe v. Berryhill*, No. 16-CV-02794-MEH, 2017 WL 2333101, at *7 (D. Colo. May 30, 2017) (relying on *Allman*, 813 F.3d at 1330).

## III.   The RFC Assessment

In assessing a claimant's RFC, the ALJ must consider the combined effect of all medically determinable impairments, including the severe and non-severe. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); 20 C.F.R. § 404.1529(a); SSR 96-9p. A claimant's RFC is the most work the claimant can perform, not the least. 20 C.F.R. § 404.1545; SSR 83-10. The ALJ's RFC assessment must be consistent with the record as a whole and supported by substantial evidence. *See generally Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004);

SSR 96-8p. If it is, the court will not reverse the ALJ's decision even if it could have reached a different conclusion. *Ellison*, 929 F.2d at 536; *see also Flaherty*, 515 F.3d at 1070 (explaining that the reviewing court may not "reweigh or retry the case.").

Plaintiff challenges the ALJ's RFC assessment on several grounds. Because the court agrees that the ALJ erred in failing to consider the effects of Plaintiff's PTSD and migraines in her RFC assessment, it focuses on these arguments only. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

### A. The Medical Evidence

#### i. Migraines

Plaintiff's history of headaches and migraines is well documented in the record, including treatment for, or reported symptoms of, migraines and/or headaches from several medical providers, spanning several years. *See, e.g.*, [#11-7 at 322, 330, 331, 361, 367; #11-8 at 368, 376, 380, 381, 384, 387, 388, 389, 390, 392, 395, 402, 404, 405, 408, 409, 410, 411, 412, 413, 415, 427; #11-9 at 438, 439, 455, 464, 473, 483, 514; #11-10 at 522, 530; #11-11 at 542, 543, 548, 550, 552, 554–55, 564, 570, 581–82; #11-12 at 590–91, 592–93, 600–01, 604–05, 606–07, 609–10; #11-13 at 699; #11-14 at 730, 741, 748, 749, 754, 772, 775, 799; #11-15 at 861, 862, 864, 867, 869]. Mayo Clinic records from February 2009 to January 2010 indicate that Ms. Berg suffered from frequent migraines, including moderate headaches lasting 6 months [#11-14 at 730, 741, 775], and that she received various treatments for her migraines, including Topamax that helped improve her symptoms [*id.* at 772], as well as emergency room visits when her symptoms were most severe [*id.* at 775]. In an April 15, 2010 report, neurologist Todd Zimprich, M.D. noted that Plaintiff returned to his office with "continued difficulties with her

11

headaches." [*Id.* at 799]. Dr. Zimprich noted that a trial medication did not improve her symptoms nor did over-the-counter remedies, but that Ms. Berg did not report being awoken from sleep due to her migraines or that coughing and/or sneezing triggered her migraines. [*Id.*].

Plaintiff also sought treatment for her migraines at Avera McKennan Hospital and Avera McGreevy Clinic between April and July 2010. Notably, Ms. Berg sought treatment for a headache lasting approximately a month, with little relief from Topamax on March 10, 2010 [#11-8 at 413, 415], and returned three days later complaining that she developed a new migraine despite taking a sample of Relpax [*id.* at 411]; on April 15, 2010, Plaintiff noted that she is in bed for 19 hours a day due to her migraines and back pain [*id.* at 410]; Plaintiff reported an increase in the frequency of her headaches on April 19, 2010, which spurred emergency room visits [*id.* at 408, 410]; and on June 22, 2010, Plaintiff stated that her headaches and other ailments affect her ability to carry out routine activities of daily living [*id.* at 427]. Medical records also indicate that Ms. Berg reported to the Avera McGreevy Clinic on July 10, 2013, because of increased migraines—approximately 5 per day—and that she received a prescription for Propranolol to help alleviate her symptoms. *See* [*id.* at 387, 395, 389–90]. These records also reveal that Ms. Berg reported some relief from her migraines due to the prescribed medication. *E.g.* [*id.* at 381, 412].

Medical records from Longs Peak Family Practice show that Plaintiff sought treatment in the emergency room for a migraine suffered on August 25, 2013 [#11-11 at 570]; that Plaintiff reported suffering from migraines every other day, with "aura of seeing shadows, . . . light sensitive, [and] vomits" [*id.* at 567–68], to which she was prescribed Sumatriptan that did not work [*id.* at 565–66]; that Plaintiff presented with a migraine lasting three days on August 3, 2014, but noted that prior Botox injections helped alleviate her migraine symptoms [*id.* at 554];

12

and that she indicated continued headaches and migraines despite Botox injections, with no increasing severity in her symptoms or improvement [*id.* at 548]. Plaintiff did report some relief from her migraines with Replax. *See* [*id.* at 565, 567, 582].

Plaintiff also presented to Denver Health Medical Center with migraines, including visits on April 24, 2014, at which Ms. Berg reported daily chronic migraines [#11-12 at 606–07], a May 9, 2014 visit wherein she reported a "constant global headache" [*id.* at 604–05], and a June 14, 2014 visit wherein Ms. Berg stated she had suffered a "5-day streak" of migraines [*id.* at 600–01]. Plaintiff received Botox injections for her frequent migraines at Denver Health Medical Center, and largely reported relief from her symptoms following the injections. *See* [#11-12 at 590–91, 592, 593]. She even testified that her first two Botox treatments helped alleviate her symptoms. *See* [#11-2 at 47]. On February 9, 2015, Ms. Berg presented to the Denver Health Medical Center hospital, complaining of increased tiredness and "feeling as though head was going to explode" after stopping her medications for migraines, but also reporting that her symptoms have "improved off meds." *See* [#11-15 at 861].

Additionally, Ms. Berg reported on her Function Report that her day-to-day ability to work depends on the strength of her migraines, that her body is going numb more frequently due to chronic migraines, and that her migraines are so debilitating that she cannot get out bed when suffering from one. *See* [#11-7 at 322, 330, 367]. She also testified before the ALJ that she suffered from "migraines every day" [#11-2 at 47], and that her migraines constitute one of her main ailments [*id.* at 50].

### ii. PTSD

Like her migraines, Plaintiff's PTSD is well documented in the record. *See, e.g.*, [#11-3 at 86–87, 93, 102–03; #11-8 at 368; #11-9 at 501, 505, 506; #11-11 at 546, 548, 550, 553, 555,

13

557, 559, 561, 563, 564, 566, 567, 569, 571; #11-12 at 611, 634, 638, 639, 643]. A Psychiatric Services, LLC diagnosis history reveals a diagnosis of PTSD beginning on February 9, 2013. [#11-8 at 368]. Relatedly, a Mental Health Partners Diagnosis – Multiaxial Assessment and Agency Discharge Summary both dated March 11, 2014, identify PTSD as a secondary Axis I clinical disorder. [#11-12 at 611, 642–43].

The record also contains evaluative evidence of her mental impairments and PTSD. An April 2009 psychiatric evaluation from the Mayo Clinic indicates Ms. Berg suffered from a mild level of anxiety and a severe level of depression. *See* [#11-14 at 761]. Her mental status examination revealed logical, coherent, and goal directed thoughts, mildly labile affect, and conversationally intact short-term memory and concentration. [*Id.*]. Her diagnoses included major depressive disorder, recurrent, severe, without psychotic features and psychological factors affecting medical condition. [*Id.* at 762].

A December 13, 2013 psychiatric evaluation by Dr. Maria Matos notes Ms. Berg appeared alert and oriented, conversational and articulate, but that her thoughts and associations were over productive and she needed "frequent redirection to keep her on track." [#11-12 at 638]. Her affect at the time was mostly sad and anxious, her mood was congruent, and her insight and judgment were poor. [*Id.*]. Dr. Matos opined that Ms. Berg identified a history of PTSD, but ultimately ruled out a diagnosis of PTSD. [*Id.* at 638–39].

On March 11, 2014, therapist Kelly Stuerke completed a Diagnosis – Multiaxial Assessment, and concluded that Ms. Berg suffered from PTSD secondary to her depressive disorder. [*Id.* at 642–43]. Ms. Stuerke opined that Plaintiff's PTSD stemmed from a history "numerous traumas including sexual abuse, rape, and [domestic violence.]" [*Id.* at 643]. Ms.

14

Stuerke continued that Ms. Berg "endorses flashbacks, exaggerated startle response, intrusive thoughts, avoidant [behaviors], hypervigilance, and nightmares." [*Id.*].

The record also contains a consultative psychiatric evaluation by Dr. Stuart Kutz, Jr. [#11-9 at 500]. Dr. Kutz reported that Ms. Berg's dress and grooming for the evaluation were fair to good, that she walked mildly slow with a shuffling gait, and that she was "basically cooperative." [*Id.*]. Dr. Kutz also indicated that Ms. Berg stated that her mental health ailments have increased upon her move from South Dakota to Colorado. [*Id.* at 501]. When questioned about her PTSD, Plaintiff responded that she suffered years of sexual abuse as a child and "three to four rapes[,]" that she has nightmares twice a week, and tries to "block" all her recollections. [*Id.*]. Dr. Kutz's mental status exam reports that Ms. Berg's affect was broad, and that she presented as mildly stuporous and somewhat anxious. [*Id.* at 504]. Dr. Kutz also stated that Ms. Berg could repeat only four digits, which she did rather slowly, and that she would not attempt to repeat five digits, leading Dr. Kutz to question Ms. Berg's credibility somewhat. [*Id.*]. Also affecting Ms. Berg's credibility was her quick cessation of repeating three objects after repeating only two, and her unwillingness to serially subtract 7s from 100. [*Id.*]. Dr. Kutz opined that Ms. Berg's attention and concentration were mildly impaired [*id.*]; that her judgment and insight were mildly to moderately impaired secondary to her suspected underlying personality disorder [*id.* at 505]; that her PTSD was mild to moderate [*id.* at 505–06]; that her other mental disorders appear chronic, but that symptom exaggeration may be present [*id.* at 506]; and that her attention, concentration, persistence, and pace in task completion, and her social adaptation were mildly to moderately impaired, but her memory and understanding were not significantly impaired [*id.*].

15

State agency psychologist Dr. Douglas Hanze also assessed Plaintiff's mental impairments. Relevant here, Dr. Hanze gave great weight to Dr. Kutz's mild to moderate limitations in the areas of attention, concentration, persistence, pace, and social adaptation. *See* [#11-3 at 90]. Dr. Hanze also provided a mental RFC assessment, finding moderate limitations in Ms. Berg's ability to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) interact appropriately with the general public; (6) ask simple questions or request assistance; and (7) accept instructions and respond appropriately to criticism from supervisors. *See* [*id.* at 91–93]. Dr. Hanze also concluded that Plaintiff's mental conditions were severe. *See* [*id.* at 87, 103].

### B. Limitations Caused By PTSD and Migraines

Plaintiff contends that the ALJ's RFC assessment is flawed given the absence of discussion regarding any limitations associated with Plaintiff's migraines or PTSD. For the following reasons, the court respectfully agrees.

The ALJ concluded that Plaintiff had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday. The claimant can never climb ladders, ropes, or scaffolds, but can otherwise frequently climb stairs/ramps, stoop, crawl, kneel, and balance. She can never work at hazardous heights or around dangerous moving machinery. Mentally, the claimant is able to understand, remember, and carry out simple, routine tasks. She can tolerate occasional interaction with the public and coworkers and frequent interaction with supervisors.

[#11-2 at 23]. In reaching this conclusion, the ALJ focuses solely on the physical ailments she found severe at step two. *See* [*id.* at 24–27]. Largely, the ALJ focuses on Ms. Berg's subjective allegations of disabling pain regarding her physical ailments, but finds these allegations not entirely persuasive due to inconsistencies with the medical evidence and Ms. Berg's daily activities, and because of the characterization of Ms. Berg as being manipulative or exaggerating her symptoms. [*Id.*]. Noticeably absent from the ALJ's RFC assessment is any discussion of limitations associated with Plaintiff's non-severe ailments, including her migraines and PTSD.

As explained, the ALJ must consider all medically determinable impairments, whether severe or not, when assessing a claimant's RFC. *See Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016). "'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7). "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

As to Plaintiff's migraines, the RFC assessment contains no discussion as to how this medically determinable impairment, though non-severe, affects her ability to perform basic work activities. At step two, the ALJ concluded that Ms. Berg's migraines had no more than a minimal impact on Plaintiff's ability to work. In so concluding, the ALJ discusses and cites to a majority of the evidence recounted above. *See* [#11-2 at 17]. Yet it is unclear what, if any, physical limitations in Plaintiff's RFC the ALJ attributed to migraines or whether the ALJ had any basis to conclude that these non-severe medical conditions did not pose any distinct

17

limitations. This is particularly troubling in light of the wealth of medical evidence documenting Plaintiff's migraines and the treatment sought for those migraines. *See Walker v. Colvin*, No. 1:12-CV-235-EJF, 2014 WL 794261, at *12 (D. Utah Feb. 27, 2014) (concluding the ALJ erred in assessing the claimant's RFC "by failing to consider her migraines at this step even if they do not rise to the level of severe."); *cf. Pennington v. Chater*, 113 F.3d 1246 (Table), 1997 WL 297684, at *3 (10th Cir. 1997) (noting the lack of objective medical testing to corroborate severe migraines is not a proper reason for discrediting a claimant's uncontroverted subjective complaints). Rather, it appears that the ALJ merely relied on her findings at Step two and, thus, did not consider Plaintiff's migraines at subsequent steps. This constitutes reversible error. *See Weaver v. Colvin*, No. 15-CV-02523-NYW, 2017 WL 590299, at *9 (D. Colo. Feb. 13, 2017) (explaining, "the ALJ may not simply rely on [her] finding of non-severity as a substitute for a proper RFC analysis.") (citation and internal quotation marks omitted)); *see also Kimbrough v. Colvin*, No. 13-CV-03449-RM, 2016 WL 319208, at *7 (D. Colo. Jan. 27, 2016) (remanding to the ALJ because, "[a]lthough the ALJ found Plaintiff's tibia fracture to be a non-severe impairment [], this did not excuse the ALJ from considering Plaintiff's tibia fracture in relation to Plaintiff's RFC.").

The court reaches a similar conclusion with respect to Plaintiff's PTSD. While the ALJ's RFC includes some mental limitations,[4] there is no discussion as to how the ALJ reached this conclusion. Defendant argues these limitations demonstrate that the ALJ's RFC assessment "adequately accounted for any believable effects stemming from her . . . PTSD." [#16 at 11].

---

[4] Specifically, the ALJ concluded, "Mentally, the claimant is able to understand, remember, and carry out simple, routine tasks. She can tolerate occasional interaction with the public and coworkers and frequent interaction with supervisors." [#11-2 at 23]. However, an ALJ's limitation to simple, routine tasks does not adequately account for a claimant's limitations to attention, concentration, and pace associated with mental impairments. *See Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014).

Though this may prove true, the court can in no way reach such a conclusion without *any* mental RFC assessment conducted by the ALJ. *See Suttles v. Colvin*, 543 F. App'x 824, 825 (10th Cir. 2013) (noting the Commissioner's regulations "require an independent step-four assessment of mental impairments found medically determinable but non-severe at step two."). The ALJ even acknowledges the need for an independent mental RFC assessment at steps four and five, *see* [#11-2 at 21], yet she conducts no such analysis. And this is not a situation in which the ALJ found *no* restrictions on the claimant's ability, thereby obviating the need to address mental impairments at subsequent steps. *See Wells*, 727 F.3d at 1065 n.3.

Rather, it appears that the ALJ again relied on her findings at step two where she concluded Ms. Berg's mental impairments, including PTSD, were non-severe, because each had only mild limitations on her activities of daily living, social functioning, and concentration, persistence, and pace, and caused no episodes of decompensation. However, "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Wells*, 727 F.3d at 1068–69; *accord Williams v. Berryhill*, 682 F. App'x 665, 670 (10th Cir. 2017) (holding the ALJ's RFC assessment was not supported by substantial evidence where the ALJ failed to provide a narrative discussion, with citations to the record, describing how the evidence supported his conclusions regarding mental limitations). As before, the record is replete with evidence concerning Ms. Berg's PTSD and other mental impairments, as well as opinion evidence concluding that she has mild to moderate mental limitations. While the ALJ addresses much of this evidence at step two, there is no discussion of this evidence at subsequent steps. *See Grotendorst v.Astrue*, 370 F. App'x 879, 884 (10th Cir. 2010) (holding as reversible error the ALJ's failure to further consider the claimant's mental impairments based on an earlier

conclusion that the claimant's mental impairments were non-severe).  Nor does it suffice for the ALJ to merely state, "the undersigned has thoroughly considered and factored in all of the above medically determinable impairments . . . when formulating the [RFC] set forth in this decision." *See Prosser v. Colvin*, No. 14-CV-01964-RM, 2015 WL 5996376, at *6 (D. Colo. Oct. 14, 2015) (holding as reversible error similar "conclusory assertions" when "the ALJ's RFC assessment includes no discussion of Plaintiff's mental impairments[,]" and "no further evaluation of Plaintiff's functional limitations in relation to her mental impairments."). Without any discussion of Plaintiff's migraines or PTSD in her RFC assessment, the court cannot conclude that the ALJ properly considered this impairment, singly and in combination with her other impairments, thereby necessitating remand of this matter to the ALJ. *See Salazar v. Barnhart*, 468 F.3d 615, 622 (10th Cir. 2006); *accord Wyche v. Colvin*, No. 16-CV-0784-WJM, 2017 WL 1435407, at *3 (D. Colo. Apr. 24, 2017) (remanding to the ALJ for failure to consider the claimant's mental impairments, including PTSD, when formulating the claimant's RFC even though the ALJ "properly considered those impairments at steps two and three in evaluating their possible severity.").

## CONCLUSION

For the reasons stated herein, the court hereby **REVERSES** the Commissioner's final decision and **REMANDS** this matter to the ALJ for further proceedings consistent with this Memorandum Opinion and Order.

DATED:  January 3, 2018                    BY THE COURT:

                                                              s/Nina Y. Wang
                                                              United States Magistrate Judge